UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

STEPHEN M. LOVELL,

      Petitioner,

v.                        Case No:  2:15-cv-764-FtM-29MRM
                                       Case No. 2:12-cr-26-FTM-29MRM

UNITED STATES OF AMERICA,

      Respondent.

_____

**OPINION AND ORDER**

This matter comes before the Court on Petitioner Stephen Lovell's (petitioner or Lovell) *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Cr. Doc. #480; Cv. Doc. #1)[1], filed on December 8, 2015, and Condensed Memorandum of Law in Support (Cr. Doc. #483; Cv. Doc. #13) filed on April 4, 2016.[2] The United States filed a Response in Opposition (Cv. Doc. #16) on May 2, 2016, to which

---

[1] The Court will refer to the civil case docket as "Cv. Doc.", and the underlying criminal docket, 2:12-cr-00026-JES-MRM-2, as "Cr. Doc."

[2] After the government moved to strike (Cv. Doc. #8) petitioner's first Memorandum in Support (Cv. Doc. #2) due to excessive filing, the Court granted petitioner leave to file a memorandum not to exceed 50 pages. (Cv. Doc. #12). Petitioner then filed a Condensed Memorandum of Law, totaling 44 pages in length. (Cr. Doc. #483; Cv. Doc. #13). The Court, thereafter, granted the government leave to exceed the page limit in its response. (Cv. Doc. #14; Cv. Doc. #18).

Lovell filed a Reply (Cv. Doc. #19) on June 7, 2016.  For the reasons below, Lovell's § 2255 motion is denied.

## I.  Procedural Background

On February 15, 2012, a federal grand jury in Fort Myers, Florida, returned a twenty-count Indictment against Lovell and eight other co-defendants.  (Cr. Doc. #3).  Count One charged Lovell with conspiracy to commit mail and health care fraud in violation of 18 U.S.C. §§ 1341, 1347, and 1349.  (Id., pp. 7-11). Counts Two through Seven charged Lovell with aiding and abetting health care fraud in violation of 18 U.S.C. §§ 2 and 1347.  (Id., pp. 11-13).  Counts Eight through Thirteen charged Lovell with aiding and abetting mail fraud in violation of 18 U.S.C. §§ 2 and 1341.  (Id., pp. 14-15).  Count Fourteen charged Lovell with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956.  (Id., pp. 16-17).  Counts Fifteen through Nineteen charged Lovell with aiding and abetting money laundering in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 2.  (Id., pp. 17-18).  Finally, Count Twenty charged Lovell with money laundering in violation of 18 U.S.C. § 1957.  (Id., pp. 19-21).

Lovell pled not guilty to all counts of the Indictment (Cr. Doc. #80) and proceeded to a jury trial on February 19, 2013 (Cr. Doc. #298).  On February 28, 2013, the jury convicted Lovell of

conspiracy to commit mail fraud[3] under Count One and found him not guilty of Counts Two through Twenty of the Indictment. (Cr. Doc. #317).

On March 7, 2013, Lovell, through counsel, filed a Motion for New Trial and Renewed Judgment of Acquittal, in which he argued the verdict was inconsistent and the evidence did not support his conviction. (Cr. Doc. #320). The Court denied Lovell's motion on April 2, 2013, finding that (a) the mere fact that the jury indicated it had reached a "stalemate" did not render the verdict unreasonable and (b) the guilty verdict was not against the weight of the evidence. (Cr. Doc. #336).

Thereafter, on July 3, 2013, Lovell filed a *pro se* motion to seek appointed-counsel and terminate his trial counsel before sentencing. (Cr. Doc. #389). Because Lovell filed the motion *pro se* while being represented by counsel, the Court struck his motion. (Cr. Doc. #391). In response, trial counsel filed a Motion to Withdraw and Request for Appointment of Counsel on behalf of Lovell, citing "irreconcilable differences between the parties." (Cr. Doc. #392, p. 1). The Court heard the motion *in-camera* on July 16, 2013. (Cr. Docs. # 399, #476).

---

[3] The jury found Lovell not guilty of conspiracy to commit health care fraud under Count One of the Indictment. (Cr. Doc. #317, p. 2).

At the hearing, Lovell testified that a conflict arose between him and counsel because counsel refused to file a Brady motion before sentencing. (Cr. Doc. #476, p. 9). Specifically, Lovell testified that he wanted counsel to file a Brady motion because (a) the government suppressed exculpatory evidence concerning interviews of his accountant, Ileana Rodriguez and (b) government witness, Agent Brian Tucker, committed perjury at trial. (Cr. Doc. #476, p. 10). Counsel testified that he did not believe the Agent committed perjury and, thus, he did not find it an effective strategy to accuse the government's lead case agent before sentencing. (Cr. Doc. #476, pp. 14-15). Further, counsel testified that he did not believe the government ever interviewed Rodriguez. (Id.). The Court ultimately denied the motion because it did not find any irreconcilable differences between Lovell and counsel as to sentencing. (Id., pp. 16-20).

Subsequently, on August 14, 2013, the undersigned sentenced Lovell to 60 months of imprisonment with a three-year term of supervised release.[4] (Cr. Docs. #236, #241). On August 27, 2013, Lovell, through appellate counsel, directly appealed his sentence,

---

[4] Petitioner was released from custody on January 19, 2018. Nonetheless, he remains "in custody" for purposes of 28 U.S.C. § 2255(a) because he is now serving his three-year term of supervised release. See Jones v. United States, 478 F. App'x 536, 539 (11th Cir. 2011) ("[A] person serving a term of supervised release is 'in custody' within the meaning of § 2255.") (citing United States v. Brown, 117 F.3d 471, 475 (11th Cir. 1997)). Thus, petitioner's motion is not rendered moot.

arguing that this Court erred in applying a four-level enhancement under U.S.S.G. § 3B1.1(a) for his role as an organizer or leader in the conspiracy because he was merely a straw owner of the clinic operated by the co-conspirators. (Cr. Doc. #427). See United States v. Lovell, 579 F. App'x 875, 876 (11th Cir. 2014). The Eleventh Circuit affirmed Lovell's sentence on September 11, 2014, and he did not seek a writ of certiorari. (Cr. Doc. #465). See id. at 876-78.

The government concedes that Lovell's § 2255 motion was timely filed (Cv. Doc. #16, p. 3), and the Court agrees.

## II. Legal Standards

### A. Evidentiary Hearing and Appointment of Counsel

A district court shall hold an evidentiary hearing on a habeas corpus petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief[.]" 28 U.S.C. § 2255(b). "[I]f the petitioner alleges facts that, if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." Aron v. United States, 291 F.3d 708, 714-15 (11th Cir. 2002) (citation omitted). However, a district court is not required to hold an evidentiary hearing where the petitioner's allegations are patently frivolous, based upon unsupported

generalizations, or affirmatively contradicted by the record. <u>See</u> <u>id.</u> at 715.

To establish entitlement to an evidentiary hearing, petitioner must "allege facts that would prove both that his counsel performed deficiently and that he was prejudiced by his counsel's deficient performance." <u>Hernandez v. United States</u>, 778 F.3d 1230, 1232-33 (11th Cir. 2015); <u>see</u> <u>also</u> <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008) (stating a hearing is not necessarily required whenever ineffective assistance of counsel is asserted). The Court finds that the record establishes that petitioner is not entitled to relief and, therefore, an evidentiary hearing is not required.

Because petitioner's motion for an evidentiary hearing is denied, appointment of counsel is not required under Rule 8(c), Rules Governing Section 2255 Proceedings for the United States District Court. Petitioner is not otherwise entitled to appointment of counsel in this case. <u>See</u> <u>Barbour v. Haley</u>, 471 F.3d 1222, 1227 (11th Cir. 2006) (stating there is no Sixth Amendment right to counsel in post-conviction collateral proceedings); <u>see</u> <u>also</u> <u>Schultz v. Wainwright</u>, 701 F.2d 900, 901 (11th Cir. 1983) ("Counsel must be appointed for an indigent federal habeas petitioner only when the interest of justice or due process so require."). Neither the interest of justice nor due process require the appointment of counsel here.

**B. Ineffective Assistance of Trial and Appellate Counsel**

The legal standard for ineffective assistance of counsel claims in a habeas proceeding is well established. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness and (2) prejudice resulted because there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. See Hinton v. Alabama, 571 U.S. 263, 272-73 (2014) (citing Strickland v. Washington, 466 U.S. 668, 687, 694 (1984) and Padilla v. Ky., 559 U.S. 356, 366 (2010)). "Because a petitioner's failure to show either deficient performance or prejudice is fatal to a Strickland claim, a court need not address both Strickland prongs if the petitioner fails to satisfy either of them." Kokal v. Sec'y, Dep't of Corr., 623 F.3d 1331, 1344 (11th Cir. 2010) (citations omitted).

The proper measure of attorney performance is "simply reasonableness under prevailing professional norms" considering all the circumstances. Hinton, 571 U.S. at 273 (internal quotations and citations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689;

see also Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (stating courts must look to the facts at the time of counsel's conduct). This judicial scrutiny is highly deferential, and the Court adheres to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. See Strickland, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel would have taken the action. See Rose v. McNeil, 634 F.3d 1224, 1241 (11th Cir. 2011); see also Hall v. Thomas, 611 F.3d 1259, 1290 (11th Cir. 2010). Additionally, an attorney is not ineffective for failing to raise or preserve a meritless issue. See United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992); see also Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir. 1989).

The same deficient performance and prejudice standards apply to appellate counsel. See Smith v. Robbins, 528 U.S. 259, 285-86 (2000); see also Roe, 528 U.S. at 476-77. If the Court finds there has been deficient performance, it must examine the merits of the claim omitted on appeal. If the omitted claim would have had a reasonable probability of success on appeal, then the deficient performance resulted in prejudice. See Joiner v. United States, 103 F.3d 961, 963 (11th Cir. 1997). Counsel is not deficient for failing to raise non-meritorious claims on direct appeal. See Diaz v. Sec'y for the Dep't of Corr., 402 F.3d 1136, 1144-45 (11th Cir. 2005).

### III. Analysis

Petitioner raises multiple grounds for relief in his § 2255 motion. Under Ground One, petitioner asserts: (1) this Court lacked subject matter jurisdiction over his criminal case due to fatal flaws in the Indictment; (2) these fatal flaws rendered the Indictment insufficient; (3) both the Court and the government constructively amended the Indictment; (4) the government lacked authority to prosecute him; and (4) both trial and appellate counsel rendered ineffective assistance in failing to assert these claims. (Cr. Doc. #483, pp. 1-10; Cv. Doc. #13, pp. 1-10).

Under Ground Two, petitioner asserts a freestanding claim of actual innocence and maintains both trial and appellate counsel were deficient in failing to assert such a claim. (Id., p. 11-14). In addition, he alleges appellate counsel rendered deficient performance when he failed to: (1) obtain Lovell's client file from trial counsel; (2) raise a sufficiency of the evidence claim on appeal; and (3) investigate and raise more than one claim on appeal. (Id., pp. 14-21).

Lastly, under Ground Two, petitioner claims trial counsel rendered ineffective assistance[5] because he failed to: (1) become familiar with Florida law; (2) challenge the government's

---

[5] For clarity, the Court has re-numbered petitioner's claims of ineffective assistance of trial counsel under Ground Two. (Cr. Doc. #483, pp. 18-19; Cv. Doc. #13, pp. 18-19).

definition of "business activities" and prove that "business activities" fell under the scope of Fla. Stat. § 460.4167; (3) impeach the testimony of government witness, Dennis LaRosa; (4) show that Xtreme Care was licensed by the Department of Health ("Department") and demonstrate the Department had higher standards for licensure; and (5) provide the jury with an alternative defense theory, including that Lovell had no knowledge of the conspiracy and that his co-conspirators could have opened Xtreme Care without him. (Id.).

Under Ground Three, petitioner claims (1) trial counsel performed deficiently when he failed to request a jury instruction regarding Florida law and (2) appellate counsel erred in failing to assert this claim on appeal. (Id., pp. 21-25).

Finally, under Ground Four, petitioner makes several claims of ineffective assistance of counsel: (1) both trial and appellate counsel failed to raise claims of prosecutorial misconduct; (2) trial counsel erred in failing to call defense witnesses; (3) trial counsel bolstered the credibility of government witness, Agent Brian Tucker; and (4) appellate counsel failed to review and request material transcripts before submitting his appellate brief. (Id., pp. 25-43).

## A.   Ground One[6]

Petitioner raises three claims[7] under Ground One.   At the crux of each claim is that the government misquoted/misrepresented the statutory language of Florida's Health Care Clinic Act, Fla. Stat. §§ 400.9905 ("HCCA" or "Act") in the "Regulatory Framework" section of the Indictment.   Specifically, he contests the emphasized language under paragraph 33:

> Florida Statute 400.9905 provided that the
> licensing requirements of the health care
> clinics did not apply to a sole

---

[6] The government argues that petitioner's claims under Ground One are procedurally barred because he failed to assert them on direct appeal.  (Cv. Doc. #16, p. 6).  The Court disagrees because such claims are not subject to procedural default.  See Massaro v. United States, 538 U.S. 500, 504 (2003) (holding that claims of ineffective assistance of counsel "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.").  The Court, therefore, will address the merits of petitioner's claims.

[7] Petitioner makes two additional claims.  First, he argues the government mistakenly misrepresented Fla. Stat. § 400.9905 as its basis for prosecuting him.  (Cr. Doc. #483, p. 2; Cv. Doc. #13, p. 2).  Petitioner's claim is refuted because the Indictment shows that his conspiracy charge is based upon, in part, his circumvention of licensing requirements under Fla. Stat. § 400.9905.  (Cr. Doc. #3, pp. 8-9).  Next, petitioner alleges the government lacked authority to prosecute him "for failing to supervise business activities not required by law[.]"  (Cv. Doc. #132, p.4).  Although petitioner's failure to supervise business activities was a part of his circumvention of Florida's licensing regulations for health care clinics, petitioner was charged with conspiracy to commit mail and health care fraud in violation of federal law.  Because the Indictment charged Lovell with federal offenses, the government had authority to prosecute him.  See 28 U.S.C.A. § 547(1) (United States attorneys are vested with authority "to prosecute for all offenses against the United States[.]").  Petitioner, therefore, fails to establish a claim for ineffective assistance of counsel.

> proprietorship, group practice, partnership, or corporation that provided health care services by licensed health care practitioners and which were wholly owned by a licensed health care practitioner, or the licensed health care practitioner, so long as one of the owners who was a licensed health care practitioner was *supervising the services performed therein* and was legally responsible for the entity's compliance with all federal and state law.

(Cr. Doc. #3, ¶ 33; Cr. Doc. #483, p. 2; Cv. Doc. #13, p. 2) (emphasis added). Lovell claims this wording conflicts with the actual language of Fla. Stat. § 400.9905(g), which provides, in pertinent part:

> A sole proprietorship, group practice, partnership, or corporation that provides health care services by licensed health care practitioners . . . and that is wholly owned by one or more licensed health care practitioners, or the licensed health care practitioners set forth in this paragraph and the spouse, parent, child, or sibling of a licensed health care practitioner if one of the owners who is a licensed health care practitioner is *supervising the business activities* and is legally responsible for the entity's compliance with all federal and state laws. However, a health care practitioner may not supervise services beyond the scope of the practitioner's license, except that, for the purposes of this part, a clinic owned by a licensee in s. 456.053(3)(b) which provides only services authorized pursuant to s.456.053(3)(b) may be supervised by a licensee specified in s. 456.053(3)(b).

(Cr. Doc. #483, p. 2; Cv. Doc. #13, p. 2). Due to the discrepancy in the statutory language, petitioner argues: (1) the Court lacked subject matter jurisdiction over his underlying criminal action;

(2) the Indictment is legally insufficient; and (3) both the Court and the government constructively amended the Indictment. Additionally, he alleges that trial and appellate counsel rendered ineffective assistance in failing to assert these claims. (Id., p. 2-10). As set forth below, the Court finds that petitioner's arguments lack merit and, thus, denies all claims under Ground One.

### 1. Failure to Challenge the Court's Subject Matter Jurisdiction

Lovell first argues this Court lacked subject matter jurisdiction to convict and sentence him because the government misrepresented/misquoted the statutory language of the HCCA in his Indictment. (Cr. Doc. #483, pp. 1-5; Cv. Doc. #13, pp. 1-5). The government responds that this minor defect did not strip the Court of its power to adjudicate Lovell's case, and the Court agrees. (Cv. Doc. #16, pp. 7-11).

There is no question this Court had subject matter jurisdiction over Lovell's underlying criminal case. "Subject-matter jurisdiction defines [a] court's authority to hear a given type of case." United States v. Morton, 467 U.S. 822, 828 (1984); United States v. Brown, 752 F.3d 1344, 1348 (11th Cir. 2014) (citation omitted). For federal crimes, district courts are granted original jurisdiction pursuant to 18 U.S.C. § 3231. See Brown, 752 F.3d at 1348. "So long as the indictment charges the

defendant with violation of a valid federal statute as enacted in the United States Code, it alleges an 'offense against the laws of the United States' and, thereby, invokes the district court's subject-matter jurisdiction." Id. at 1354 (citing Alikhani v. United States, 200 F.3d 732, 734-35 (11th Cir. 2000)).

Under Ground One, the grand jury charged Lovell with conspiracy to commit mail and health care fraud in violation of 18 U.S.C. §§ 1341, 1347, and 1349. Because Lovell's conduct fell within the sweep of the United States Code, the Indictment invoked this Court's subject matter jurisdiction. Even if Lovell's Indictment contained a defect, this would not have stripped the Court of its original jurisdiction. See United States v. Cotton, 535 U.S. 625, 631 (2002) ("[D]efects in an indictment do not deprive a court of its power to adjudicate a case."). Having decided that subject matter jurisdiction existed over Lovell's criminal action, the Court turns to the sufficiency of the Indictment.

### 2. Failure to Challenge Lovell's Indictment

Lovell argues the government misrepresented the statutory language of Fla. Stat. § 400.9905 in the Indictment and thus it is deficient as a matter of law. (Cv. Doc. #13, pp. 1-5). The government argues (a) the "Regulatory Framework" section merely provided a "summation" of the applicable licensing scheme under Fla. Stat. § 400.9905 and (b) the Indictment sufficiently presents

the elements of conspiracy under Count One.  (Cv. Doc. #16, pp.
5-11).

An indictment is sufficient as a matter of law if it:

> (1) presents the essential elements of the
> charged offense, (2) notifies the accused of
> the charges to be defended against, and (3)
> enables the accused to rely upon a judgment
> under the indictment as a bar against double
> jeopardy for any subsequent prosecution for
> the same offense. In determining whether an
> indictment is sufficient, [the Court] read[s]
> it as a whole and give[s] it a common sense
> construction.    In    other    words,    the
> indictment's validity is to be determined by
> practical, not technical, considerations.

United States v. Jordan, 582 F.3d 1239, 1245 (11th Cir. 2009)

(internal citations and quotations omitted).

Applying the above precedent, petitioner's challenge fails.
Count One of the Indictment alleges that Lovell and his co-
defendants:

> knowingly, willfully and unlawfully combined,
> conspired, confederated, and agreed . . . to
> commit certain offenses to wit:
>
> (a) mail fraud, that is, to devise a scheme
> and artifice to defraud and obtain money and
> property by means of false and fraudulent
> pretenses, representations and promises for
> the purpose of executing such scheme or
> artifice or attempting to do so, knowingly
> placed in an authorized depository for mail
> matter any matter or thing to be sent or
> delivered by the United States Postal Service
> in violation of Title 18, United States Code,
> Section 1341; and
>
> (b) health care fraud, that is, to knowingly
> and willfully execute, and attempt to execute

a scheme and artifice to defraud and to
obtain, by means of materially false and
fraudulent pretenses, representations, and
promises, money and property owned by, and
under control of a healthcare benefit program
as defined in 18 U.S.C. §24(b), including but
not limited to, Peak Property and Casualty
Corporation, in connection with the delivery
of and payment for health care benefits,
items, and services, in violation of Title 18,
United States Code, Section 1347.

(Cr. Doc. #3, pp. 7-8). Considering the above, the Court finds

Lovell's Indictment legally sufficient because it presented the

essential elements of conspiracy to commit mail and health care

fraud, notified Lovell of his charge, and enabled him to rely on

his Indictment as a bar to double jeopardy.

Even though the government misstated the exemption language

of HCCA under the "Regulatory Framework" section of the Indictment,

this did not render the Indictment legally defective. (Id., ¶

33). The Eleventh Circuit has held that "[m]inor deficiencies in

an indictment do not automatically render it constitutionally

deficient, and if an indictment specifically refers to the statute

on which the charge was based, the reference to the statutory

language adequately informs the defendant of the charge." United

States v. Haile, 685 F.3d 1211, 1217 (11th Cir. 2012) (citing

United States v. Poirer, 321 F.3d 1024, 1029 (11th Cir. 2003);

United States v. Fern, 155 F.3d 1318, 1325 (11th Cir. 1998)); see

also Unites States v. Chilcote, 724 F.2d 1498, 1505 (11th Cir.

1984) ("Any slight variance between the language of the indictment

and the statute itself is cured by the indictment's reference to the statute.").

The Court finds that citations to the HCCA cured any slight variance in the language of the "Regulatory Framework" portion of the Indictment.  In addition, looking at the contested language in conjunction with Count One, Lovell's argument lacks merit. Count One not only cites to HCCA, but it provides language consistent with the statute.  (Id., pp. 7-9).  Thus, the alleged defect did not render the Indictment legally insufficient.  In any event, Lovell was not prejudiced by the Indictment's use of the term "services" because the record shows that both parties used the term "business activities" at trial, as provided under the HCCA.  (Cr. Doc. #439, pp. 65, 67, 86, 90, 97).  Consequently, petitioner's second claim fails.

Next, petitioner alleges the Court and the government constructively amended his Indictment.  (Cr. Doc. #483, pp. 7-9; Cv. Doc. #13, pp. 7-9).  The government argues no constructive amendment occurred because neither it nor the Court broadened or amended Lovell's charge of conspiracy under Count One.  The Court agrees with the government.

A constructive amendment constitutes *per se* reversible error because it violates a defendant's constitutional right to be tried only on the charges presented in an indictment.  See United States v. Williams, 527 F.3d 1235, 1246 (11th Cir. 2008) (citations

omitted).  An amendment "occurs when the theory or evidence presented by the government, or the jury instructions, alter the 'essential elements' of the offense contained in the indictment to broaden the possible bases for conviction beyond what is charged." United States v. Leon, 841 F.3d 1187, 1192 (11th Cir. 2016) (internal citations and quotations omitted)).

Lovell argues the Court's failure to match the exact language of the Indictment in its instructions to the jury created a constructive amendment.  (Cr. Doc. #483, pp. 7-9; Cv. Doc. #13, pp. 7-9).  Specifically, he contends the Court amended the Indictment when it instructed the jury on the exemption provision of Fla. Stat. § 400.9905(g) and used the term "business activities" as opposed to the term "services" used in the Indictment.  (Id.). The government argues that the Court did not broaden or amend Lovell's charge of conspiracy under Count One because "failure to supervise" is not an element of conspiracy.  (Cv. Doc. #16, pp. 8-11).  Rather, the government asserts the basis of the conspiracy charge was that petitioner and co-defendants "agreed to conceal and misrepresent the true ownership of Xtreme Care." (Id., p. 11).

Reviewing the jury instructions in context, Lovell was not convicted on elements beyond his Indictment and thus no constructive amendment occurred.  The Court instructed the jury on the essential elements of conspiracy, which was based upon

Lovell's agreement to fraudulently avoid the licensure requirements under Florida law by concealing and misrepresenting the true ownership of the health care clinic. (Cr. Docs. #315, pp. 18-19, #443, pp. 77-79). A licensed practitioner's supervision of business activities is not an element of conspiracy but merely a way in which a health care clinic may receive exemption from licensing under Florida law. (Id., pp. 76-79). Therefore, the Court's use of the term "business activities" as opposed to the term "services" used in the Indictment did not modify an essential element of conspiracy or allow the jury to convict Lovell of an offense not presented in the Indictment. In any case, petitioner does not show how this minor inconsistency in the language "confuse[d], misle[]d, or prejudice[d] the jury." United States v. Steele, 733 F. App'x 472, 476 (11th Cir. 2018). Because the "substance of the indictment remained intact," any failure by the Court "to exactly match the form of the indictment did not give rise to a constructive amendment." United States v. Vernon, 723 F.3d at 1264, 1266 (citing Moore, 525 F.3d at 1046)). It is for these same reasons petitioner's claim that the government constructively amended his Indictment also fails.

Finally, because there was neither a basis to challenge the Court's subject matter jurisdiction nor Lovell's Indictment, trial and appellate counsel did not render ineffective assistance in violation of Strickland. Ground One, therefore, is denied.

**B. Ground Two**

**1. Freestanding Claim of Actual Innocence**

Under Ground Two, Lovell first asserts a freestanding claim of actual innocence and maintains that both trial and appellate counsel rendered ineffective assistance in failing to assert this claim. (Cr. Doc. #483, pp. 11-14; Cv. Doc. #13, pp. 11-14). The government argues petitioner's claim lacks merit because he is not actually innocent, and the Court agrees. (Cv. Doc. #16, p. 16).

While a petitioner may allege actual innocence to overcome a procedural bar or the application of the one-year limitations period, the Supreme Court has "not resolved whether a prisoner may be entitled to a habeas relief based on a freestanding claim of actual innocence." McQuiggin v. Perkins, 569 U.S. 383, 384 (2013) (citing Herrera v. Collins, 506 U.S. 390, 404-05 (1993)). The Eleventh Circuit, however, "forbids granting habeas relief based upon a claim of actual innocence . . . at least in non-capital cases." Jordan v. Sec'y Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir. 2007) (citations omitted); see also Cunningham v. Dist. Attorney's Office for Escambia Cty., 592 F.3d 1237, 1272 (11th Cir. 2010) (recognizing that the Eleventh Circuit's "own precedent does not allow habeas relief on a freestanding innocence claim in non-capital cases"). Thus, petitioner's claim of actual innocence is not cognizable on collateral review.

Even liberally construing petitioner's motion, he has not made the requisite showing under any articulation of the actual innocence standard. "'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623-24 (1998) (citation omitted). Lovell argues that his conviction runs afoul of Florida law because Fla. Stat. § 460.4167[8] forbids his supervision of Xtreme Care. (Id., pp. 11-12). As the government contends, Fla. Stat. § 460.4167 regulates the proprietorship by persons *other than* licensed chiropractors. (Cv. Doc. #16, pp. 19-23). As a licensed chiropractor at the time of this case, Fla. Stat. § 460.4167 did not set forth Lovell's standard of conduct.[9] Regardless, petitioner's claim sounds in legal, not factual, innocence. Because Lovell's argument relates to the legal sufficiency of his conviction, he is not actually innocent under this theory.

---

[8] Initially, petitioner cited to Fla. Stat. § 460.6167 in his Memorandum (Cr. Doc. #483, pp. 21-24; Cv. Doc. #13, pp. 21-24), which, as the government points out, does not exist. (Cv. Doc. # 16, pp. 20-21). In his Reply, petitioner admits he intended to cite to Fla. Stat. § 460.4167 rather than Fla. Stat. § 460.6167. (Cv. Doc. #19, p. 16). The Court, therefore, addresses petitioner's arguments as they relate to Fla. Stat. § 460.4167.

[9] Under Ground One, petitioner claims both the Court and the government failed to advise the jury that Fla. Stat. § 460.6167 prohibited his supervision of business activities. (Cr. Doc. #483, p. 7; Cv. Doc. #13, p. 7). Petitioner's claim, however, fails because, as the Court has stated, this provision did not set forth the standard for Lovell's conduct.

To the extent Lovell argues his clerical staff committed the fraud or that he had no knowledge of the criminal conduct, his claim fails because "actual innocence generally requires the presentation of new evidence showing [a] petitioner's innocence[,]" and Lovell has failed to present any newly discovered evidence. (Id., p. 12-13). Mendoza v. Secretary, Florida Department of Corrections, 659 F. App'x 974, 982 (11th Cir. 2016). Lovell's claim is, therefore, denied.

In sum, because there was no basis upon which to assert Lovell's actual innocence, both trial and appellate counsel did not render ineffective assistance in failing to raise this non-meritorious claim.

### 2. Ineffective Assistance of Trial Counsel

Petitioner also alleges under Ground Two that trial counsel rendered constitutionally deficient performance when he failed to: (1) become familiar with Fla. Stat. §§ 400.9905 and 460.6167; (2) challenge the government's definition of "business activities" and prove that "business activities" fell under the scope of Fla. Stat. § 460.4167; (3) impeach the testimony of government witness, Dennis LaRosa, when he testified that "business activities" were undefined under the Act; (4) show that Xtreme Care was licensed by the Department of Health ("Department") and demonstrate the Department held higher standards for licensure; and (5) provide the jury with an alternative defense theory, including that Lovell

had no knowledge of the conspiracy and that the co-conspirators could have opened Xtreme Care without him. (Cr. Doc. #483, pp. 15-20; Cv. Doc. #13, pp. 15-20).

Petitioner first contends trial counsel performed ineffectively at trial because he failed to understand Fla. Stat. §§ 400.9905 and 460.4167. (Id., p. 15). As the Court noted above, Fla. Stat. § 460.4167 applies to persons *other than* licensed chiropractors and, thus, does not apply to Lovell. As such, Lovell cannot show trial counsel performed deficiently if this provision had no application to his case.

Additionally, the record refutes Lovell's claim that trial counsel failed to understand Fla. Stat. § 400.9905. During opening statement, trial counsel attacked the government's use of statutory terms and its theory that Lovell merely constituted a "nominee owner" of the clinic. (Cr. Doc. #438, pp. 32-35). Further, trial counsel extensively cross-examined government witness and cabinet level officer of Florida's Agency for Health Care Administration, Dennis LaRosa ("LaRosa"). (Cr. Doc. #439, pp. 72-89). LaRosa testified about the licensing regulations for health care clinics under the Act. (Id., p. 54-97). Trial counsel questioned LaRosa's knowledge of the Act and casted doubt as to the inconsistencies and ambiguities in the statute's terminology. (Id., p. 72-89). The record thus indicates trial counsel had an adequate, if not advanced, understanding of Fla.

Stat. § 400.9905. Because petitioner fails to show trial counsel performed deficiently, this claim is denied.

Second, Lovell asserts trial counsel failed to (a) challenge the government's definition of "business activities" and (b) prove that the term "business activities" fell under the purview of Fla. Stat. § 460.4167. (Id., pp. 15-16). The record refutes Lovell's first argument. First, the government never sought to define business activities. In fact, during direct examination, the government elicited testimony from LaRosa that business activities were *undefined* by the Act. (Cr. Doc. #439, p. 67). In addition, as stated above, trial counsel **did** challenge the use of the term "business activities." (Cr. Doc. #439, pp. 72-89). Not only did trial counsel cross-examine LaRosa on the fact that the statute did not define the term "business activities," he attempted to elicit testimony that the legislature's failure to define this key term led to an ambiguity in the Act. (Id.). Turning to Lovell's second argument, as the Court has stated several times thus far, Fla. Stat. § 460.4167 regulates persons other than licensed chiropractors and, therefore, does not apply to Lovell. In addition, Fla. Stat. § 460.4167 neither uses the term "business activities," nor provides its definition. For these reasons, petitioner's claims are denied.

Lovell next argues trial counsel erred by failing to impeach LaRosa when he testified that "business activities" were undefined

under HCCA. (Cr. Doc. #483, pp. 14-15; Cv. Doc. #13, pp. 14-15).

As the government contends, Lovell's claim fails because, unlike

what petitioner asserts, the Act does **not** define the term "business

activities." See Fla. Stat. § 400.9905. (Cv. Doc. #16, p. 17).

Thus, the statute itself corroborates LaRosa's testimony. See id.

Therefore, because there was no basis upon which to impeach LaRosa,

trial counsel did not provide ineffective assistance.

Petitioner also maintains trial counsel erred by failing to

show (1) Xtreme Care was licensed by the Department of Health and

(2) the Department maintained a higher standard for licensure.

(Cr. Doc. #483, p. 16; Cv. Doc. #13, p. 16). The government argues

Lovell's claim lacks merit because the Department licenses the

practice of medicine whereas the Agency for Health Care

Administration ("AHCA") licenses the business. (Cv. Doc. #16, p.

17). The government also argues that proof that the Department

had a higher standard for licensure does not undermine the fact

that petitioner conspired to avoid licensing under the AHCA.

(Id., pp. 17-18). The Court agrees with the government. Even if

the Department licensed Lovell as a chiropractor and held a higher

standard for licensure compared to the AHCA, this does not negate

the fact that Lovell was indicted and ultimately convicted of

conspiracy based upon, in part, his avoidance of the AHCA's

licensing requirements. Trial counsel, therefore, did not perform

ineffectively in failing to provide evidence that the Department

licensed Lovell as a chiropractor and subjected him to higher scrutiny.

Finally, petitioner alleges trial counsel erred in failing to show evidence that he was not an "indispensable" party to the fraud and thus the "fraudsters could have easily opened up their own clinic without [his] slightest involvement." (Cr. Doc. #483, p. 19; Cv. Doc. #13, p. 19). The government asserts this theory would not have changed the fact that petitioner conspired with Fernandez Huici and Ernesto Diaz to commit mail and health care fraud, and the Court agrees. (Cv. Doc. #16, pp. 17-18). Additionally, as the government asserts, evidence at trial showed Huici and Diaz could have opened the clinic without Lovell. At trial, Huici testified that he did not "necessarily" need Lovell as the clinic doctor and "[a]ny other doctor could have . . . served the purpose." (Cr. Doc. #440, p. 116). The evidence at trial showed that Huici and Diaz could have chosen *any* doctor to further their fraudulent scheme, yet they chose Lovell. (Id.). Since the jury found Lovell joined the conspiracy, he now cannot argue that he was not an essential party to the crime. Therefore, because no reasonable counsel would have argued the theory Lovell now asserts, his claim fails.

### 3. Ineffective Assistance of Appellate Counsel

Lastly under Ground Two, petitioner raises three claims of ineffective assistance of appellate counsel. He claims appellate

counsel failed to: (1) obtain his client file from trial counsel;
(2) raise a sufficiency of the evidence claim on appeal; and (3)
investigate and raise more than one claim on appeal. (Cr. Doc.
#483, p. 20; Cv. Doc. #13, p. 20).

Petitioner first argues appellate counsel provided
ineffective assistance by failing to obtain his client file from
trial counsel. (Id., p. 20). Liberally construing his argument,
Lovell contends that without this file, appellate counsel could
not effectively represent him on appeal. (Id.). Even if
appellate counsel never obtained trial counsel's case file, Lovell
has failed to identify which documents were not seen by appellate
counsel and how these documents would have made a difference on
appeal. Lovell, therefore, has failed to allege there is a
reasonable probability that, but for appellate counsel's failure
to obtain trial counsel's case file, his direct appeal would have
been successful. Because petitioner has failed to show prejudice,
his claim is denied.

Second, petitioner argues appellate counsel failed to
challenge the sufficiency of the evidence at trial on appeal.
(Cr. Doc. #483, p. 20; Cv. Doc. #13, p. 20). Petitioner, through
trial counsel, raised a sufficiency of the evidence argument both
after the government's case in chief and post-judgment. (Cr.
Docs. #320, #442, p. 108). As the Court previously held (Cr.
Docs. #336; #442, p. 108), the evidence of Lovell's agreement with

his co-conspirators was strong and a reasonable jury could have found Lovell guilty beyond a reasonable doubt as to Count One. Because a challenge to the legal sufficiency of Lovell's conviction fails, appellate counsel did not render ineffective assistance of counsel in failing to assert this non-meritorious claim on appeal.

Finally, petitioner claims appellate counsel provided ineffective assistance because he advised Lovell that he was only appointed to brief a single issue on appeal and thus would not investigate further claims. (Cr. Doc. #483, p. 20; Cv. Doc. #13, p. 20). Appellate counsel made a tactical decision to pursue only one issue on appeal, which, in his professional judgment, he deemed to have the greatest chance for success. The Court will not second-guess that decision. At bottom, petitioner fails to show there is a reasonable probability that any of the claims he now raises would have prevailed on appeal. Even if appellate counsel misrepresented the scope of his representation, petitioner still fails to show prejudice and, therefore, his claim is denied.

## C. Ground Three

Under Ground Three, petitioner asserts that trial counsel rendered ineffective assistance in failing to request a jury instruction explaining the applicability of Fla. Stat. § 460.4167 to his case. (Cr. Doc. #483, pp. 21-25; Cv. Doc. #13, pp. 21-25). He also claims appellate counsel erred in failing to assert this claim on direct appeal. (Id., pp. 22, 24). Notably, petitioner

fails to specify the instruction he believes trial counsel should have requested. The government maintains that petitioner's arguments lacks merit because Fla. Stat. § 460.4167 does not apply to Lovell as a chiropractor and thus both trial and appellate counsel did not fall short of <u>Strickland</u>. (Cv. Doc. #16, pp. 19-23). The Court agrees with the government.

As the Court previously stated, Fla. Stat. § 460.4167 regulates the proprietorship by persons *other than* licensed chiropractors and, therefore, does not set the standard for Lovell's conduct. Consequently, no reasonable counsel would have requested a jury instruction applying this provision to Lovell's case. As such, appellate counsel did not perform ineffectively in failing to raise this non-meritorious claim. Accordingly, Ground Three is denied.

**D. Ground Four**

Under Ground Four, petitioner claims both trial and appellate counsel rendered deficient performance in failing to assert claims of prosecutorial misconduct. (Cr. Doc. #483, pp. 25-42; Cv. Doc. #13, pp. 25-42). Specifically, Lovell argues that the government (1) suppressed evidence regarding his accountant and "true mastermind" behind the conspiracy, Ileana Rodriguez, and (2) failed to correct false testimony by Agent Tucker at trial. (<u>Id.</u>). The government responds that petitioner's claims fail because (a) it disclosed undercover activity involving Rodriguez to the

defense and (b) Agent Tucker testified truthfully. (Cv. Doc. #16, pp. 26-29).

Additionally, petitioner alleges trial counsel erred by (a) refusing to call Rodriguez at trial and (b) bolstering Agent Tucker's credibility during his closing argument. (Cr. Doc. #483, pp. 26, 28-29, 39-40, 42; Cv. Doc. #13, pp. 26, 28-29, 39-40, 42). Petitioner also alleges that appellate counsel erred in failing to request/review material court transcripts before submitting Lovell's appellate brief. (Id., pp. 39-40). Lastly, petitioner asserts the government misrepresented the law during closing argument. (Cr. Doc. #483, p. 38; Cv. Doc. #13, p. 38). The Court will address each argument in turn, starting with petitioner's claims of prosecutorial misconduct.

**1. Failure to Allege Claims of Prosecutorial Misconduct**

Petitioner first asserts that the government suppressed evidence of undercover interviews of Rodriguez in violation of Brady v. Maryland, 373 U.S. 83, 87 (1963). (Cr. Doc. #483, pp. 25-31, 33, 35, 38-39; Cv. Doc. #13, pp. 25-31, 33, 35, 38-39). The government maintains that it disclosed the undercover activity to Lovell during discovery and thus no Brady violation occurred. (Cv. Doc. #16, p. 26-28). For the reasons below, petitioner's claim is due to be denied.

The government has a constitutional obligation to disclose exculpatory evidence in its possession to a defendant. See Brady,

373 U.S. at 87.  To establish a Brady violation, a defendant must prove:

> (1) that the prosecution possessed evidence favorable to the defendant;
>
> (2) that the defendant did not possess the evidence nor could he have obtained it himself with any reasonable diligence;
>
> (3) that the prosecution suppressed the favorable evidence; and
>
> (4) that had the evidence been disclosed to the defense, a reasonable probability exists that the outcome of the proceedings would have been different.

See United States v. Bailey, 123 F.3d 1381, 1397 (11th Cir. 1997) (citing Routly v. Singletary, 33 F.3d 1279, 1285 (11th Cir. 1994)).

Lovell has not provided any credible showing of a Brady violation.  Petitioner asserts the government suppressed three undercover investigations of Rodriguez that he later discovered in his presentence investigation report ("PSR").  (Cr. Doc. #483, pp. 26-28; Cv. Doc. #13, pp. 26-28; Cv. Doc. #19, pp. 24-25).  The first discussion took place on August 22, 2011.[10]  (Cv. Doc. #19, pp. 24-25).  (Presentence Investigation Report at ¶ 144, United States v. Lovell, Case No.: 2:12-cr-00026-JES-MRM-2).  On that

---

[10] Petitioner alleges suppressed undercover activity occurred on August 15, 2011, citing to paragraph 144 of the PSR.  (Cv. Doc. #19, p. 24).  A review of paragraph 144 shows undercover activity took place on August 22, 2011, not August 15, 2011.  (Presentence Investigation Report at ¶ 144, United States v. Lovell, Case No.: 2:12-cr-00026-JES-MRM-2).

date, undercover agents posed as accident victims and visited Xtreme Care for treatment. (Id.). The PSR does not indicate that agents interviewed Rodriguez but merely recognized her as the female behind the counter. (Id.). Next, on November 10, 2011, agents met with Fernandez at Xtreme Care and he introduced them to Martin Balmori, the son-in-law of Rodriguez. (Id., ¶ 199-202). Rodriguez was not present that day, but Balmori told agents that she was the person to contact about opening a business. (Id., ¶ 202). Finally, unlike what petitioner asserts, the PSR does not indicate that a third meeting occurred on December 1, 2011. (Presentence Investigation Report, United States v. Lovell, Case No.: 2:12-cr-00026-JES-MRM-2). Even if the government suppressed this evidence, Lovell neither shows how such evidence was favorable to him, nor that there is a reasonable probability it would have persuaded the jury to acquit him.

Even more significant, Lovell's assertions appear to refute his claim that the government suppressed evidence of Rodriguez. In his Condensed Memorandum, Lovell admits that, during discovery, he received recordings of discussions between undercover agents and Rodriguez in which agents posed as fake patients and sought information about setting up a clinic. (Cr. Doc. #483, p. 25; Cv. Doc. #13, p. 25). Thus, it appears Lovell concedes that, before trial, he knew that agents had undercover discussions with Rodriguez about the clinic business. (Id.). Despite this, Lovell

still fails to show how these undercover meetings constitute favorable evidence. Additionally, as the Court previously held, the evidence against Lovell at trial was strong and thus it is highly unlikely these discussions would have convinced the jury to acquit him. (Cr. Doc. #336, pp. 2-3). Petitioner, therefore, has failed to alleged conduct that amounts to a Brady claim. Because there was no showing of a basis for trial or appellate counsel to assert prosecutorial misconduct, petitioner's claim for ineffective assistance of counsel is also denied.

Next, Lovell claims that both trial and appellate counsel performed deficiently in failing to allege a Giglio claim. (Cr. Doc. #483, pp. 27-28; Cv. Doc. #13, pp. 27-28). Specifically, petitioner alleges the government failed to correct perjured testimony by Agent Tucker at trial. (Id.). The government argues petitioner's allegation lacks merit because Agent Tucker testified truthfully. (Cv. Doc. #16, p. 28-29). The Court agrees with the government.

In Trepal, the Eleventh Circuit summarized the applicable standard under Giglio:

> In Giglio v. United States, 405 U.S. 150 (1972), the Supreme Court held that when the prosecution solicits or fails to correct known false evidence, due process requires a new trial where the false testimony could in any reasonable likelihood have affected the judgment of the jury. Giglio error, which is a species of Brady error, exists when the undisclosed evidence demonstrates that the

> prosecution's case included perjured
> testimony and that the prosecution knew, or
> should have known, of the perjury. To
> establish a Giglio claim, a habeas petitioner
> must prove: (1) the prosecutor knowingly used
> perjured testimony or failed to correct what
> he subsequently learned was false testimony;
> and (2) such use was material, i.e., that
> there is any reasonable likelihood that the
> false testimony could have affected the
> judgment.

Trepal v. Secretary, Fla. Dep't of Corrs., 684 F.3d 1088, 1107-08

(11th Cir. 2012) (internal citations and quotation marks

omitted)); see also United States v. Alzate, 47 F.3d 1103, 1109

(11th Cir. 1995) (stating evidence is material "if there is a

reasonable probability that, had the evidence been disclosed to

the defense, the result of the proceeding would have been

different.").

Lovell argues the following exchange between his counsel and

Agent Tucker at trial constitutes perjurious testimony and thus

supports a Giglio claim:

> Q. Did you go subpoena for this trial the lady
> from Pronto (Rodriguez)?
>
> A. No.
>
> Q. Did you try?
>
> A. No.
>
> Q. Did you interview her?
>
> A. No.

(Cr. Doc. #442, pp. 88-89; Cr. Doc. #483, pp. 27-28; Cv. Doc. #13, pp. 27-28). The Court finds that Lovell has failed to make a credible showing of a Giglio claim because he has not shown that the above testimony constitutes perjury. First, unlike what petitioner asserts, the record shows that the government neither listed Ileana Rodriguez as a witness, nor called her to testify at trial. (Cr. Docs. #296-#297, #436-#444). Thus, the record refutes petitioner's claim as to this portion of Agent Tucker's testimony. In addition, he fails to allege how this testimony would have a reasonable likelihood of affecting the outcome of his case.

Petitioner also fails to show any evidence that Agent Tucker testified falsely when he said he had not interviewed Rodriguez. (Cr. Doc. #443, pp. 89). First, the record indicates that, at the time of the investigation, Agent Tucker was employed by the Internal Revenue Service ("IRS") and did not take part in the undercover investigation spearheaded by the local Cape Coral Police Department. (Cr. Doc. #442, p. 4; Presentence Investigation Report at ¶¶ 16, 23, United States v. Lovell, Case No.: 2:12-cr-00026-JES-MRM-2). In addition, Tucker only testified as to his own investigation and did not state whether other law enforcement interviewed Rodriguez. (Cv. Doc. #442, p. 89). Agent Tucker's testimony, therefore, does not conflict with the record. Finally, petitioner does not show there is a reasonable likelihood

this testimony affected the outcome of the case. The bottom line, however, is that Lovell has not provided any evidence that Agent Tucker committed perjury besides petitioner's own self-serving and speculative statements. Without evidence of perjury, Lovell's Giglio claim fails. Because there was no basis for trial or appellate counsel to assert a claim for prosecutorial misconduct, petitioner's claim for ineffective assistance of counsel also fails.

## 2. Ineffective Assistance of Trial Counsel

Petitioner alleges trial counsel erred in failing to call Rodriguez as a trial witness. (Cr. Doc. #483, pp. 26, 41-42; Cv. Doc. #13, pp. 26, 41-42). The Court is not persuaded.

The Eleventh Circuit has stated, "[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc). Counsel's decision not to subpoena any witnesses is a classic example of such a strategic decision and one this Court will not second-guess.

Indeed, trial counsel testified that he did not subpoena Rodriguez at trial because he believed it would have exposed Lovell to criminal repercussions based upon false tax returns associated with his other clinics. (Cr. Dc. #476, p. 13). Although petitioner argues that Rodriguez only prepared tax returns for two

of his clinics, this does not undermine counsel's belief that these
witnesses could have placed Lovell under further scrutiny,
especially when counsel testified that the government, during pre-
trial negotiations, threatened Lovell's other businesses. (Id.).
Further, at the same hearing, Lovell testified that counsel "did
a fantastic job in trial" and petitioner understood counsel's
decision not to call witnesses from the accounting firm. (Id.,
pp. 16-17). In any case, petitioner fails to show prejudice
because the record demonstrates that trial counsel attempted to
cast blame on everyone but Lovell, including his tax preparers.
The Court, therefore, denies petitioner's claim.

Next, Lovell argues that trial counsel improperly (1)
bolstered the credibility of Agent Tucker at trial and (2)
mischaracterized Tucker's role at trial during the motion to
withdraw hearing. (Cr. Doc. #483, pp. 28-29; Cv. Doc. #13, pp.
28-29). The Court is not persuaded.

Lovell alleges counsel improperly bolstered Agent Tucker's
credibility during closing argument when counsel "lauded . . .
[Tucker's] experience in the private sector with a national
accounting firm," and said the Agent was "one you can rely on
because he's not just any government employee!" (Id.). A review
of the record refutes petitioner's claim. First, petitioner
mischaracterizes counsel's closing statement. During closing,
counsel attempted to undermine, not bolster, Agent Tucker's

experience by focusing on the fact that Tucker was an arm of the IRS and, implicitly, could not be trusted. (Cr. Doc. #443, p. 63). Counsel argued:

> Agent Tucker testified not only about his law enforcement experience, but his prior private sector experience, his private sector experience with a national accounting firm, where they do legitimate accounting. Is he somebody who you can rely on with that much experience? That's ultimately up for you to decide, but take into consideration he's not just any government employee.

(Id.) (emphasis added). Reviewing counsel's argument in context, it appears he attempted to draw the sting out of Tucker's extensive accounting experience by undermining his trustworthiness as an employee of the IRS. In any event, the record also shows that counsel attacked Agent Tucker in other ways. First, counsel challenged Tucker's bias as a government employee, arguing that he examined evidence with a "tunnel vision" and thus did not conduct a full, fair investigation. (Id., p. 48). In addition, counsel asserted that the government called "liar after liar after liar after liar . . . hop[ing] that the cumulative effect of the liars will sway the jury." (Id., p. 50). The record, therefore, indicates trial counsel attacked, not bolstered, Agent Tucker's credibility, veracity, and trustworthiness. Lovell's claim of ineffective assistance of counsel is thus denied.

Lovell also claims trial counsel mischaracterized Tucker's role in the investigation during the motion to withdraw hearing.

Specifically, he alleges counsel misguided the Court when he characterized Agent Tucker as merely a "summary witness" and not "a critical guilt or innocence witness." (Cr. Doc. #476, p. 13; Cr. Doc. #483, p. 29; Cv. Doc. #13, p. 29). Contrary to petitioner's claim, the record shows Agent Tucker served as a "summary witness" because he created and testified to several summary charts relating to the finances of the fraudulent businesses led by Lovell and other co-defendants. (Cr. Doc. #442, pp. 18-21). Moreover, even if Agent Tucker served as a critical guilt or innocence witness, petitioner cannot show prejudice because Agent Tucker's role at trial did not affect the Court's ruling on Lovell's motion to withdraw. Consequently, petitioner's claim is denied.

### 3. Ineffective Assistance of Appellate Counsel

Under Ground Four, petitioner asserts appellate counsel erred by failing to review case transcripts before submitting Lovell's appellate brief. (Cr. Doc. #483, pp. 39-40; Cv. Doc. #13, pp. 39-40). Specifically, he alleges appellate counsel refused to (1) examine material trial transcripts and (2) request a transcript of the motion to withdraw hearing. (Id.).

Petitioner has failed to make a credible showing of ineffective assistance of counsel under his first argument. Even if appellate counsel never reviewed Lovell's trial transcripts, Lovell has failed to identify which documents were not seen by

appellate counsel and how these transcripts would have made a difference on appeal. Petitioner, therefore, has failed to allege there is a reasonable probability that, but for appellate counsel's failure to examine trial transcripts, his direct appeal would have been successful.

Petitioner's second claim fares no better than the first. Lovell asserts that counsel rendered constitutionally deficient performance by failing to move to unseal the *in-camera* motion to withdraw hearing transcript. (Id.). He claims this transcript would have assisted appellate counsel in asserting claims of prosecutorial misconduct on appeal. (Id.). As the Court stated above, petitioner's claims of prosecutorial misconduct lack merit and thus would have had no success on appeal. Because counsel's access to the *in-camera* transcript would have had no impact on the outcome of Lovell's appeal, he cannot show prejudice.

### 4. Failure to Challenge Government's Misrepresentation of Law

Petitioner alleges the government indirectly "misrepresented the law to the jury" during closing argument when he accused Lovell of not caring. (Cr. Doc. #483, p. 38; Cv. Doc. #13, p. 38). He alleges trial counsel performed deficiently in failing to correct this error. (Id.). Specifically, Lovell maintains the government misrepresented the law when the prosecutor argued:

> Well, counsel says, Dr. Lovell doesn't know
> the volume of the business. Remember the
> tight rope I told you about? That comment

> puts him off the tight rope because if you're
> supervising the business activities, you know
> the volume of business.  The reality is, he
> didn't care.  He got his weekly payment and
> they got what they got.

(Cr. Doc. #443, pp. 62-63; Cr. Doc. #483, p. 38; Cv. Doc. #13, p. 38).  Notably, petitioner fails to allege how the government indirectly misstated the law in his argument.  Even a review of the transcript does not indicate which law the prosecutor misrepresented.  (Cr. Doc. #443, pp. 62-63).  Thus, petitioner's claim is frivolous and, as a result, his claim for ineffective assistance of counsel fails. Consequently, Ground Four is denied.

Accordingly, it is hereby

**ORDERED:**

1. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Cr. Doc. #480; Cv. Doc. #1) is **DENIED.**

2. Petitioner's Motion for an Evidentiary Hearing (Cr. Doc. #480, p. 13; Cv. Doc. #1, p. 13) is **DENIED.**  To the extent petitioner requests appointed counsel, such motion is **DENIED.**

3. The Clerk of the Court shall enter judgment accordingly, terminate any pending motions, and close the civil file. The Clerk is further directed to place a copy of the civil Judgment in the criminal file.

**IT IS FURTHER ORDERED:**

**A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.** A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1); Harbison v. Bell, 556 U.S. 180, 183 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(B)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," Miller-El v. Cockrell, 537 U.S. 322, 336 (2003)(citations omitted). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE and ORDERED** at Fort Myers, Florida, this <u> 2nd </u> day of October, 2018.

<u>John E. Steele</u>
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
All Parties of Record